**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

RUDOLPH M. PETRITZ,

Plaintiff,

vs.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,

Defendant.

CV 21-03-BU-JTJ

**MEMORANDUM AND ORDER**

## INTRODUCTION

Plaintiff Rudolph M. Petritz (Petritz) brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), denying his application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Petritz resides in Butte, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). The parties have consented to have the undersigned conduct all

proceedings in this matter and enter judgment. (Doc. 7).

**BACKGROUND**

Petritz is 71 years old. (Doc. 8 at 24 ). Petritz has a high school education. (Doc. 8 at 47). Petritz has past work experience as a sheet metal worker. (Doc. 8 at 24). Petritz filed his application for Social Security disability and disability insurance benefits on April 30, 2014. (Doc. 8 at 164). Petritz alleged that he became disabled on March 2, 2010. (Doc. 8 at 19, 386). Petritz alleged that he became disabled due to asthma, allergies, chronic sinus problems, sleep apnea, and a prior heart attack. (Doc. 8 at). Petritz was last insured on March 31, 2015. (Doc. 8 at 166).

An Administrative law judge (ALJ) conducted a hearing on Petritz's application for social security benefits on August 8, 2016. (Doc. 8 at 164). The ALJ issued his decision on October 24, 2016. (Doc. 8 at 170). The ALJ determined that Petritz was not disabled at any time between March 2, 2010, and the date Petritz was last insured, March 31, 2015. (Doc. 8 at 169).

*Id.* The ALJ determined that Petritz was not disabled because he did not have a medically determinable impairment during the relevant time period. *Id.*

Petritz requested that the Administration Appeals Council (Appeals Council) review the ALJ's decision. The Appeals Council granted Petritz's

request. The Appeals Council remanded the ALJ's decision for further proceedings. (Doc. 8 at 178-179).

A different ALJ conducted a hearing on October 31, 2018. (Doc. 8 at 184). The ALJ determined that Petritz had the following severe impairments: chronic pulmonary disease, and allergic respiratory disorders. (Doc. 8 at 187). The ALJ also determined that Petritz had a single non-severe impairment: coronary artery disease. (Doc. 8 at 187). The ALJ concluded that Petritz was not disabled because he possessed the residual functional capacity to perform jobs that existed in significant numbers in the national economy. (Doc. 8 at 192-193).

Petritz requested that the Appeals Council review the second ALJ decision. The Appeals Council granted Petritz's request. The Appeals Council remanded the ALJ's decision for further proceedings. (Doc. 8 at 204-205).

The ALJ conducted a hearing on August 4, 2020. (Doc. 8 at 16). The ALJ determined that Petritz had the following severe impairments: chronic pulmonary disease, and allergic respiratory disorders. (Doc. 8 at 19). The ALJ concluded that Petritz was not disabled because he possessed the residual functional capacity to perform jobs that existed in significant numbers in the national economy such as: cleaner, laundry worker, packager, rural mail carrier, and sweeper cleaner. (Doc. 8 at 25).

Petritz requested that the Appeals Council review the ALJ's decision. (Doc. 8 at). The Appeals Council denied Petritz's request for review. *Id.* The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner. *Id.*

Petritz filed the present appeal on January 1, 2021. (Doc. 1). The matter has been fully briefed. (Docs. 10, 12, 13). The Court is prepared to rule.

## STANDARD OF REVIEW

The Court's review in this matter is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant

has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A),(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. *Id.* The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Does the claimant have an impairment that is severe or a combination of impairments that is severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Do any of the claimant's impairments "meet or equal" one of the impairments described in the listing of impairments in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§

      404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof under steps one through four. *Id.* The Commissioner bears the burden of proof under step five. *Id.*

**A. ALJ's determination**

The ALJ followed the 5-step evaluation process in evaluating Petritz's claim. At step 1, the ALJ determined that Petritz had not engaged in substantial gainful activity during the period from March 2, 2010, through the date he was last insured, March 31, 2015. (Doc. 8 at 19).

At step 2, the ALJ determined that Petritz had the following severe impairments: chronic obstructive pulmonary disease and allergic respiratory disease. (Doc. 8 at 19).

At step 3, the ALJ found that Petritz did not have an impairment, or combination of impairments, that met or was medically equal to one of the listed impairments. (Doc. 8 at 19).

Before considering step 4, the ALJ determined Petritz's residual functional capacity (RFC). The ALJ determined that Petritz possessed the RFC to perform medium work subject to the following limitations: 1) Petritz can lift, carry, push or pull 50 pounds occasionally and 25 pounds frequently; 2) Petritz can stand and/or walk for 6 hours in an 8-hour workday; 3) Petritz can sit for 6 hours in an 8-hour workday; 4) Petritz can occasionally climb ladders, ropes or scaffolds; 5) Petritz can frequently climb ramps and stairs; 6) Petritz can frequently balance, stoop, kneel, crouch and crawl; 7) Petritz must avoid concentrated exposure to extreme cold, extreme heat, dusts, fumes, odors, and poor ventilation; 8) Petritz must avoid concentrated exposure to hazards including unprotected heights and dangerous machinery. (Doc. 17 at 20).

At step 4, the ALJ determined that Petritz was unable to perform his past relevant work as a sheet metal worker. (Doc. 8 at 24).

At step 5, the ALJ determined that Petritz possessed the residual functional capacity to perform jobs that existed in significant numbers in the national economy such as: cleaner, laundry worker, packager, rural mail carrier, and sweeper cleaner. (Doc. 8 at 25). Based on this finding, the ALJ determined that Petritz was not disabled. (Doc. 8 at 26).

## CONTENTIONS

### A. Petritz's Contentions

Petritz argues that the Court should reverse the Commissioner's decision and remand the case for further proceedings or for an award of benefits. (Doc. 10 at 28). Petritz argues that the Commissioner's decision should be reversed for the following reasons:

1. The ALJ erred at step 5 when he failed to identify and resolve the conflicts that allegedly existed between the vocational expert's testimony regarding the occupations he could perform, and the job requirements for those occupations stated in the Dictionary of Occupational Titles (DOT);

2. The ALJ erred when he presented a hypothetical question to the vocational expert stating that Petritz was capable of performing medium exertional work; and

3. The ALJ erred when he failed to find him disabled based on the vocational expert's response to the second hypothetical question.

(Doc. 10 at 5).

### B. Commissioner's Position

The Commissioner argues that the Court should affirm the ALJ's decision because his decision was based on substantial evidence and was free of legal error.

## DISCUSSION

### A. Conflict Between the Vocational Expert's testimony and the Job Requirements listed in the DOT

The ALJ determined that Petritz possessed the RFC to perform medium exertional work subject to certain limitations. One of the stated limitations was that Petritz must "avoid concentrated exposure to extreme cold, extreme heat, dusts, fumes, odors, and poor ventilation." (Doc. 8 at 20). This limitation was consistent with the findings of state agency medical consultants Dr. William Fernandez, M.D., and Dr. Tim Schofield, M.D., and was also consistent with the opinion offered by the testifying medical expert, Dr. Steven Goldstein, M.D. (Doc. 8 at 105, 145-146, 157-158). Drs. Fernandez, Schofield, and Goldstein all opined that Petritiz must avoid "concentrated exposure" to dusts, fumes, odors. *Id.*

At step 5, the ALJ asked the vocational expert whether a person with Petritz's RFC could perform jobs that existed in significant numbers in the national economy. The vocational expert testified that a person with Petritiz's RFC could work as a Cleaner, Laundry Worker, Packager, Rural Mail Carrier, and Sweeper Cleaner. (Doc. 8 at 19-20, 25, 47-50). The ALJ adopted the vocational expert's testimony and determined that Petritz was not disabled.

Petritz argues that the ALJ erred at step 5 because he adopted the vocational expert's testimony regarding the occupations he could perform, without resolving a "conflict" that existed between the vocational expert's testimony and the job requirements stated in the DOT. Petritz argues that if the ALJ would have addressed the conflict, the ALJ may have concluded that Petritz could not perform the five jobs described by the vocational expert because the jobs (in combination) require at least some exposure to dust, dirt, debris, heat, weather conditions, humidity, and cleaning agents. (Doc. 10 at 13-15). Petritz argues that the ALJ's failure to resolve the alleged conflict mandates a remand for proper consideration of the vocational expert's testimony.

At step 5, the ALJ has "the burden to identify specific occupations existing in substantial numbers in the national economy that a claimant can perform despite his limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). The ALJ may meet this burden by adopting the testimony of the vocational expert or by making reference to the job requirements stated in the DOT. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The DOT describes the job requirements for occupations that exist in the national economy. *Zavalin*, 778 F.3d 845-846.

The vocational expert's testimony should be consistent with the DOT. *See* Social Security Regulation (SSR) 00-4p, at *2, *available at* 2000 WL 1898704.

When a vocational expert provides testimony regarding the occupations that a claimant can perform, the ALJ has an affirmative responsibility to ask the vocational expert whether any conflict exists between his or her testimony and the job requirements stated in the DOT. SSR 00-4p, at *4. A conflict exists if it is "obvious or apparent" that the vocational expert's testimony is at odds with the DOT's stated job requirements. *Gutierrrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).

When an obvious or apparent conflict exists between the vocational expert's testimony and the DOT, neither the DOT or the vocational expert's testimony automatically trumps. SSR 00-4p, at *2. In such a situation, the ALJ has an affirmative obligation to resolve the conflict by eliciting a reasonable explanation from the vocational expert. *Id.*; *Zavalin*, 778 F.3d at 846. An ALJ may rely on vocational expert testimony that conflicts with the DOT so long as there is "persuasive testimony" to support the deviation. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). If the ALJ fails to resolve an apparent conflict, the inconsistency may leave the court with a gap in the record that precludes the court from determining whether the ALJ's decision is supported by substantial evidence. *Zavalin*, 778 F.3d at 846.

Here, the ALJ asked the vocational expert whether the five occupations she

had identified (Cleaner, Laundry Worker, Packager, Rural Mail Carrier, and Sweeper Cleaner) complied with Petritz's need to avoid concentrated exposure to fumes, odors, dust, and other pulmonary irritants. (Doc. 8 at 50). The vocational expert responded that all 5 occupations were compatible with Petritz's RFC because they "typically" did not require concentrated exposure to pulmonary irritants. *Id.*

According to the DOT, 3 of the 5 occupations (Cleaner, Laundry Worker and Sweeper Cleaner) do not require exposure to atomospheric conditions,[1] weather, or extreme temperatures. See DOT 381.687-018 (Cleaner), *available at* 1991 WL 673258; DOT (Laundry Worker), *available at* 1991 WL 672983; DOT 389.683-010 (Sweeper Cleaner), *available at* 1991 WL 673279. Although the Cleaner job would involve cleaning dust and dirt (DOT 381.687-018), nothing in the DOT indicates that the exposure to dust and dirt would rise to the level of a "concentrated exposure" precluded by Petritz's RFC. Therefore, no obvious or apparent conflict existed between the vocational expert's testimony and the DOT.

According to the DOT, the Rural Mail Carrier occupation would require occasional exposure to weather, but no exposure to atmospheric conditions or

---

[1] The DOT's *Selected Characteristics of Occupations* (SCO) supplement defines atmospheric conditions as "exposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation" which "affect the respiratory system, eyes, or the skin." U.S. Dept. of Labor, SCO, at App'x D-2.

extreme temperatures. DOT 230.363-010, *available at* 1991 WL 672157. Therefore, no obvious or apparent conflict existed between the vocational expert's testimony and the DOT.

A conflict does exist, however, with respect to the Packager occupation. According to the DOT, the Packager occupation requires "frequent" exposure to atmospheric conditions. DOT 381.587-018, *available at* 1991 WL 687916. It is unclear whether the term "concentrated exposure" as used in the RFC refers to the frequency of exposure to pulmonary irritants, the duration of exposure to pulmonary irritants, or the strength of pulmonary irritants. The Court may reasonably infer that an employee who cannot tolerate concentrated exposure to pulmonary irritants cannot reasonably work at a job that requires frequent exposure to pulmonary irritants. The ALJ erred when he failed to identify this conflict and resolve the conflict by eliciting a reasonable explanation from the vocational expert. The ALJ's error was harmless, however, because it was "inconsequential to the ultimate nondisability determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ properly identified four occupations that Petritz could perform despite his impairments and limitations.

**B. First Hypothetical Question Presented to the Vocational Expert**

As discussed above, the first hypothetical question that the ALJ presented to the vocational expert stated that Petritz possessed the RFC to perform medium exertional work subject to certain limitations. Petritz argues that this hypothetical question was defective because it should have stated that he was only capable of performing light exertional work. Petritz argues that the hypothetical question should have limited him to light exertional work because Dr. Goldstein opined, during the hearing on October 31, 2018 hearing, that Petritiz may be limited to work at a light exertional level. (Doc. 8 at 102-104).

A review of the record reveals that Dr. Goldstein offered his opinion without having reviewed the results of Petritz's pulmonary function test. (Doc. 8 at 103-104). Dr. Goldstein testified that if a review of Petritz's pulmonary function test showed that Petritz was "80% of normal," Petritz may, in fact, be capable of medium exertional work. (Doc. 8 at 105). Dr. Goldstein stated that he was merely "guessing" that Petritz was limited to a light exertional level based on the medical information he was able to review. *Id.*

The ALJ's finding that Petritz could perform medium exertional work was supported by substantial evidence. Treating pulmonary specialist, Dr. Keith Popovich, M.D., found that Petritz could "work in any capacity on a regular and

continuing basis . . . eight hours a day, five days a week." (Doc. 8 at 23, 825). Dr. Popovich found that Petritz had no work-related limitations despite his chronic obstruction pulmonary disease and allergic respiratory disease. (Doc. 8 at 23, 825). Respiratory abnormalities found during Petritz's examinations were generally described as "slight" or "mild." (Doc. 8 at 21, 825, 854, 880). Many examinations revealed no significant abnormalities in Petritz's respiratory system. (Doc. 8 at 21, 717, 721, 723, 726, 728, 741, 763, 772, 885, 946, 947).

Petritz's treating physician Patrick McGree, M.D., opined that Petritz could stand and walk four hours per workday (two hours at a time), sit four six hours per day, lift 40 pounds occasionally and 20 pounds frequently. (Doc. 8 at 103, 106, 913).

State agency medical consultants Dr. Fernandez and Dr. Schofield found that Petritz could perform medium exertional work (standing/walking 6 hours per workday and lifting/carrying 50 pounds occasionally and 25 pounds frequently) so long as he avoided concentrated exposure environmental and pulmonary irritants. (Doc. 8 at 22-23, 144-146, 156-157).

Petritz's daily activities also supported the ALJ's finding that Petritz was capable of working at a medium exertional level. Petriz reported that his daily activities included regular household repairs, welding, significant automotive

work, and home remodeling. (Doc. 8 at 22, 467, 676, 683, 701, 714). Petritz reported that he was able to weld and perform automotive work so long as he wore a respirator. (Doc. 8 at 705).

The ALJ did not err when he presented hypothetical questions to the vocational expert stating that Petritz was capable of performing work at a medium exertional level.

**C. Second Hypothetical Question**

During the hearing on August 4, 2020, the ALJ presented a second hypothetical to the vocational expert at Petritz's request. The second hypothetical question asked the vocational expert to consider whether a person with Petritz's RFC would be employable if he could have absolutely no exposure to fumes, odors, dust, gases, extreme heat or cold, wet or humid conditions, or poor ventilation. (Doc. 8 at 50-51). The vocational expert responded that such a person would be unemployable. (Doc. 8 at 50).

Petritz argues that the ALJ erred when he failed to find him disabled based on the vocational expert's response to the second hypothetical. Petritz argues that the second hypothetical should govern this case because Dr. Goldstein testified, during the hearing on October 31, 2018, that Petritz should have no exposure to pulmonary irritants. (Doc. 8 at 105-106).

Petritz's description of Dr. Goldstein's testimony is not accurate. Dr. Goldstein did not testify that Petritz could have no exposure to pulmonary irritants. Rather, Dr. Goldstein testified that Petritz must avoid any "concentrated exposure" to pulmonary irritants. (Doc. 8 at 105). The limitation described in the second hypothetical — that Petritz could have absolutely no exposure to pulmonary irritants — was not supported by substantial evidence. An ALJ is not required to include limitations in a hypothetical question that are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-757 (9th Cir. 1989). The ALJ, therefore, did not err when he disregarded the vocational expert's response to the second hypothetical.

Accordingly, IT IS HEREBY ORDERED:

1. The Commissioner's decision to deny Petritz's claim for disability and disability insurance benefits is AFFIRMED.

2. The Clerk is directed to enter judgment accordingly.

DATED this 28th day of December, 2021.

John Johnston
United States Magistrate Judge